# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-00-00765-CR

**Charles Gordon Haines, Appellant**

**v.**

**The State of Texas, Appellee**

## FROM THE DISTRICT COURT OF RUNNELS COUNTY, 119TH JUDICIAL DISTRICT NO. 4835, HONORABLE BEN WOODWARD, JUDGE PRESIDING

A jury convicted Charles Gordon Haines of aggravated assault with a deadly weapon and assessed punishment at ten years in prison. Haines complains that his counsel was ineffective and that the district court erred by (i) stopping his use of a hypothetical question during jury voir dire, and (ii) admitting an exhibit for which chain of custody had not been shown. We affirm the judgment.

## BACKGROUND

The evidence is undisputed that Haines and the complainant physically struggled, that they hit each other with a hammer, and that Haines shot her. They differ on who started the altercation. Though Haines does not challenge the sufficiency of the evidence, the following evidence will provide a context for the discussion of his points of error.

*The Complainant's Version*

The complainant, a sixteen-year-old girl, knew Haines from his visits to her grandmother's house.[1] The complainant said she asked him for a ride to a store and then to meet her boyfriend. The complainant was upset when her boyfriend was not at their meeting place. Haines consoled her and told her that he wanted to take her to his ranch. Though she did not want to go, Haines drove her to the ranch. On the drive, he offered her $400 to have sex with him; she declined that offer.

Upon arriving at his ranch, Haines stripped and smoked crack. The complainant testified that she called her grandmother; the complainant acknowledged that, while on the phone, she smoked marihuana. The complainant told Haines she was ready to go home; Haines asked her if she was ready to have sex. When she declined, he asked her if she wanted to take a bath. She pretended to do so. When she left the bathroom, she rubbed his back. When she again told him she wanted to leave, Haines said "okay," but started looking in the trash; the complainant said he was "tripping." He offered her a ring (that he found in the trash) as if she were his wife. She took the ring. He asked if she could help him get off dope and clean his house.

Haines hid the phone to keep her from making another call. When they finally started back to town, they soon turned back because Haines felt ill. He went back to his room and lay down.

The complainant was getting angry because she wanted to leave. When Haines started telling her she was beautiful, she walked away. He then hit her in the back of the head with a hammer. When she turned around, he hit her in the forehead. After a struggle, she took the hammer

---

[1] The court instructed the jury to disregard her testimony that Haines "visited" to buy dope.

away and hit him lightly with it. She then hit him with the phone, which seemed to stun him. When she ran to the front door, Haines shot her.

The complainant ran to a neighbor's house asking for help, then ran to the highway. The truck driver she flagged down summoned the sheriff's department. When the sheriff's deputies arrived, they told her that Haines had reported her as a robber. She gave them the ring he had given her. She testified that she left her purse in the truck and did not take anything that did not belong to her. She said she did not put Haines's personal property in her purse.

Antonio Gutierrez Tapia ("Gutierrez"), Haines's neighbor, testified that he saw Haines chasing the complainant. He said Haines, carrying a gun, jumped the fence and the complainant hid behind Gutierrez. When Haines lowered the gun, the complainant ran away. Haines said that she had tried to rob him. Haines went back to his house, got into his pickup and drove off. Gutierrez admitted that he and Haines had been to court in a dispute over Gutierrez's purchase of Haines's land. Gutierrez's son and Haines's daughter had been married but were divorced by the time of trial.

*Haines's Version*

Haines denied much of the testimony of the complainant and Gutierrez; for example, Haines said he was in no physical condition to run or jump a fence. Haines, a fifty-five-year-old retired master captain in the merchant marine, suffered from debilitating injuries including five ruptured disks in his back, three in his neck; these caused diminished sensation on his left side, and constant pain for which he takes Narco, codeine, and aspirin.

Haines agreed that he casually knew the complainant through her grandmother, who used to babysit for his grandchildren. Haines testified that the complainant's grandmother called him

3

to her house, but never said why. The grandmother asked him to take the complainant on her errands. He said the complainant, who was introduced to him as being twenty-three years old, asked to see his ranch. He reluctantly agreed because he was planning a quick trip to the ranch to pick up some paperwork to take to a bank. As they drove, she prepared a "blunt"—a tobacco cigar refilled with marihuana. He told her to put it away. She did, but later smoked it anyway.

When they arrived at the ranch, he went to the bathroom because he was feeling unwell. He heard drawers opening and closing. Eventually, while he was sitting on the toilet, the complainant came into the bathroom, turned off the lights, and hit him with a hammer. They struggled and he started hitting her with the hammer. She eventually knocked him out briefly. After he revived, she attacked him again. He ended up with cuts on his head, neck, and hands. He heard footsteps and, thinking that someone else was in the house, went and found his gun. To prevent her from throwing the hammer at him and killing him, he shot her. After she ran away, he put the gun up. Haines testified that he followed her to Gutierrez's house fearing that she intended to harm Gutierrez.

Haines denied asking the complainant to have sex, asserting that medical problems prevented him from enjoying sex. He denied that she rubbed his back or that he smoked any crack cocaine. Haines identified items found in the complainant's purse as his billfold and watch and his daughter's camera from his bedroom. He denied putting those items in her purse.

4

**DISCUSSION**

Haines asserts by his second point of error that the district court abused its discretion at jury voir dire by not allowing defense counsel to use a hypothetical situation to determine jury panelists' attitudes about requiring the State to prove each element of its case. Defense counsel used a hypothetical murder case tried in Runnels County in which the evidence showed the murder occurred in Tarrant County; defense counsel queried the panelists whether they could find the defendant guilty despite the State's failure to prove that the offense occurred in Runnels County. One panelist said, "I think if he done it, it doesn't make any difference where he done it." Another agreed. Yet another inquired about the effect of changes of venue. Another asked what would happen if the murderers dumped the body in Runnels County. At this point, the prosecutor interrupted and asked the district court to stop this line of questioning because the hypothetical situation had so many exceptions that it was not wholly accurate,[2] but was confusing and misleading. The district court agreed and instructed defense counsel to choose another hypothetical.

We review a trial court's limitation of voir dire examination for an abuse of discretion. *See Howard v. State*, 941 S.W.2d 102, 108 (Tex. Crim. App. 1996). A trial court may restrict confusing or misleading voir dire questions. *Id.* We conclude that the district court did not abuse its discretion by curtailing a line of questioning that was mutating beyond the scope of the initial hypothetical into confusion among the panelists. We overrule point two.

---

[2] For example, if the place within the State where the offense occurred cannot be readily determined, trial can be held in the county in which the defendant resides, in the county in which he is apprehended, or the county to which he is extradited. Tex. Code Crim. Proc. Ann. art. 13.19 (West 1977). Though defense counsel initially stated that the evidence in the hypothetical case showed where the murder occurred, the panelists' questions were straying from that construct.

By point of error three, Haines complains that the district court erred by admitting a bloody shirt into evidence. The State offered it as the complainant's shirt, but the chain of custody was incomplete. We review the admission of evidence for an abuse of discretion. *See Montgomery v. State*, 810 S.W.2d 372, 378 (Tex. Crim. App. 1990). "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Tex. R. Evid. 901(a). The proponent may identify the evidence by means of distinctive appearance or characteristics taken in conjunction with the circumstances. *Id.* 901(b)(4). Breaks in the chain of custody go to the weight of the evidence, not its admissibility. *Porter v. State*, 969 S.W.2d 60, 66-67 (Tex. App.—Austin 1998, pet. ref'd).

The proponent of the shirt, the first deputy sheriff on the scene, testified that the shirt was the one the complainant was wearing. He recognized it because it was a basketball jersey with the number thirteen and the name O'Neal on its back; in addition, it had bloodstains on the front and back as it had when he saw the complainant wearing it. He said the only difference from when he saw it on the complainant was a cut in the material that might have occurred at the hospital. The break in custody occurred because the deputy could not remember what other peace officer brought him the shirt from the hospital. Since the testifying deputy acquired possession of the shirt, it had been in a sealed sack. Haines objected that the State had failed to show a chain of custody or other acceptable provenance for the shirt. The court overruled the objection and admitted the shirt.

We conclude that the deputy's testimony about the identifying characteristics of the shirt (the name, number, and bloodstains) and testimony that the shirt was essentially as he had seen

6

it on the night of the event sufficiently identifies the shirt as the one the complainant wore during the incident. The jury could consider the break in custody when determining what weight to assign the shirt. We find no abuse of discretion. We also conclude that the shirt was not a crucial piece of evidence because Haines admitted hitting the complainant with the hammer. Because the fact that the complainant's shirt was bloody was not incriminating, any error in its admission was harmless. We overrule point three.

By point of error one, Haines contends that his counsel rendered ineffective assistance. We review the effectiveness of counsel under a two-pronged test. *Strickland v. Washington*, 466 U.S. 668, 686-89 (1984); *Hernandez v. State*, 726 S.W.2d 53, 57 (Tex. Crim. App. 1986). An appellant must show (1) that his trial counsel's performance was deficient, in that counsel made such serious errors he was not functioning effectively as counsel, and (2) that the deficient performance prejudiced the defense to such a degree that the defendant was deprived of a fair trial. *Strickland*, 466 U.S. at 686-89; *Oestrick v. State*, 939 S.W.2d 232, 237 (Tex. App.—Austin 1997, pet. ref'd); *Banks v. State*, 819 S.W.2d 676, 681 (Tex. App.—San Antonio 1991, pet. ref'd). The defendant has the burden to prove a claim of ineffective assistance of counsel by a preponderance of the evidence. *McFarland v. State*, 928 S.W.2d 482, 500 (Tex. Crim. App. 1996). Our review is highly deferential. *Strickland*, 466 U.S. at 689. We must indulge a strong presumption that trial counsel's conduct falls within a wide range of reasonable representation. *McFarland*, 928 S.W.2d at 500. Ineffective counsel cannot be shown by an isolated part of counsel's representation, but must be judged on the totality of the representation. *Oestrick*, 939 S.W.2d at 237. A strong presumption also exists that counsel's actions might be considered sound trial strategy. *Jackson v. State*, 877 S.W.2d 768, 771

7

(Tex. Crim. App. 1994). An error in trial strategy will be deemed inadequate representation only if counsel's actions are without any plausible basis. *Ex parte Ewing*, 570 S.W.2d 941, 945 (Tex. Crim. App. 1978); *Thomas v. State*, 886 S.W.2d 388, 392 (Tex. App.—Houston [1st Dist.] 1994, pet. ref'd).

Haines complains of his counsel's failures to act. He complains that counsel did not move to strike for cause jury panelist number fifty-eight, who stated he would be unable to acquit a defendant if the State could not prove the county in which the offense occurred, and panelist number five who agreed with panelist fifty-eight. He also complains about his counsel's failure to object to the following "improper or prejudicial" questions and testimony: (1) testimony from a deputy sheriff that a crack pipe was found in Haines's bedroom, (2) the prosecutor's asking the deputy if Gutierrez gave a statement at the scene that corroborated the complainant's story, (3) the complainant's testimony that Haines went to her grandmother's house "to buy dope," and (4) the complainant's testimony that Haines was smoking crack. Haines also complains that his counsel should have requested a mistrial or at least a jury instruction regarding these instances.

Haines has not shown harmful ineffectiveness in the failure to move to strike panelists five and fifty-eight for cause. The failures to strike the panelists were entwined with the curtailed hypothetical discussed under point two. More important, neither of the panelists making the statements to which Haines objects served on the jury. Haines could show harm only if his counsel used a peremptory challenge on the complained-of panelist, all of his peremptory challenges were exhausted, and an objectionable juror sat on the jury. *Cf. Green v. State*, 934 S.W.2d 92, 105 (Tex. Crim. App. 1996) (establishing standards for showing harm from court's denial of motion to strike

for cause). The jury was selected from the first thirty-three panelists (twelve jurors, ten peremptory strikes per side, one juror struck for cause by agreement) so number fifty-eight was not a threat to make the jury; the failure to have him struck for cause was not necessarily ineffective and certainly caused no actual harm. Haines's attorney used a peremptory strike against panelist five, but there is no indication that his use of a peremptory strike rather than a motion to strike for cause resulted in empaneling an objectionable juror. Haines has not shown ineffectiveness or harm based on the failure to move to strike for cause.

Any significant potential harm from the failure to object to the deputy's response that Gutierrez's statement at the scene corroborated the complainant's statements was erased when Gutierrez himself testified at the trial. Haines's attorney cross-examined Gutierrez extensively on his testimony at trial and disparities between that and the statement he gave to police at the scene. The jury could assess whether his testimony corroborated the complainant's testimony.

Haines complains of counsel's failure to object when the prosecutor asked the complainant why Haines went to her grandmother's house and the complainant replied "[t]o buy dope." After the prosecutor asked, "Okay. Are you saying that your grandmother was a dope dealer?" and the complainant replied, "Yes," defense counsel objected to the line of questioning and asked to approach the bench. After a bench conference, the court said, "I'm going to ask the Jury to disregard any evidence or any statement that indicates that the Defendant may have purchased some illegal drugs at some time. So if y'all will just disregard that and we'll continue on now." Haines's counsel did object to the question and testimony; even if his objection was tardy, the district court instructed the jury to disregard the complained-of testimony. "Except in extreme cases, if the

trial court sustains a timely objection and instructs the jury to disregard an improper response referring to an extraneous offense, the error is cured." *Moody v. State*, 827 S.W.2d 875, 890 (Tex. Crim. App. 1992). Because this is not an extreme case, the instruction to disregard cured any error and Haines's counsel was not harmfully ineffective for failing to request a mistrial.

Haines's remaining complaints address other failures to object to "improper or prejudicial" testimony regarding Haines's use of crack cocaine. He cites the complainant's testimony that Haines smoked crack in the bedroom before the assault and the deputy's testimony about finding a crack pipe in the bedroom of the house where the assault occurred. Haines does not state the basis on which his counsel should have objected. Setting aside whether the complaint is adequately presented, we interpret his complaint as being that counsel allowed evidence of other crimes, wrongs or acts.

We find no ineffectiveness because it is not clear that such an objection would have been valid. Though evidence of extraneous bad acts is not admissible to prove the character of a person in order to show action in conformity therewith, it may be admissible for other purposes such as to prove motive or opportunity. *See* Tex. R. Evid. 404(b). It may also be admissible to provide a context for the charged offense. *See Camacho v. State*, 864 S.W.2d 524, 532 (Tex. Crim. App. 1993) (evidence of kidnaping committed proximately to murder admissible to show intent and context of murder). The complainant's testimony about Haines's crack use provides a context for his assault of her and also illustrates a possible impetus for the attack. The complainant testified that, after smoking the crack, Haines was "tripping" and eventually attacked her after she persistently refused to have sex with him. The evidence of drug use was admissible. *See Heiman v. State*, 923 S.W.2d

10

622, 625-26 (Tex. App.—Houston [1st Dist.] 1995, pet. ref'd) (evidence of drug use that precipitated sexual assault is admissible as same transaction contextual evidence).[3] Haines's counsel was not ineffective for failing to object to admissible evidence. For the same reason, he was not ineffective for failing to object to the deputy's testimony about finding the crack pipe in the house, which corroborated the complainant's testimony that Haines used crack before the assault. We overrule point one.

## CONCLUSION

Having overruled all of Haines's points of error, we affirm the judgment of conviction.

Jan P. Patterson, Justice

Before Chief Justice Aboussie, Justices Yeakel and Patterson

Affirmed

Filed: August 30, 2001

Do Not Publish

---

[3] Our conclusion that the evidence of drug *use* is admissible is not inconsistent with the district court's admonishment that the jury must disregard the evidence of Haines's drug *purchase* hours before the assault. Evidence of how and where Haines bought some crack is not as closely connected to his assault of the complainant as is evidence that he was under the influence of crack when he attacked her.

11